Thank you, Your Honor. May it please the Court, Samantha Amato, petitioner for Rene Herrera-Castanola. I would like to reserve two minutes for rebuttal. Keep an eye on the clock, if you will. We'll try to help you. Thank you. The government continues to relitigate the same cause of action and issue in which a federal court on May 6, 2004, held that the government was a stop from calling Mr. Herrera an alien. The government did not appeal this May 6, 2004, holding, which became a final judgment on the merits. And the same federal district court confirmed in July of 2004 that the government again was collaterally a stop from holding that Mr. Herrera was an alien. Counsel, let me ask you this. I take your point about the estoppel issue, but you're not contending that your client has become a citizen, are you? Well, he's — they're a stop from holding he's an alien. We're asking the court to allow him to file a certificate of citizenship, nunk protunk 1972, which is when the affirmative government misconduct occurred. But there's a statute that specifically has to be complied with for him to become a citizen. Are you contending that he complied with that? In 1972, he did, yes, Your Honor. He was under the age of 18. His mother was a U.S. citizen, and he was admitted as a lawful permanent resident. He did comply in 1972 with the constitutional and the INA requirements. And — Well, but yet you say it's not automatic. You say he still now has to go through another procedure that you want permission to do. Correct. So you're not asking this Court to say he's a citizen. At this time, no. We're asking that he be allowed pro nunk tunk to 1972 to — And protunk. Sorry. Nunk protunk. Protunk is a hockey player. That he be allowed to apply on the merits of 1972. Sorry, Your Honor. Counselor, if I might, we have a great case, Mu Stonich v. Mukasey, written by our chief or our presiding judge today. And this Mu Stonich seems to suggest that the service, that the INS or the IJ or the BIA, has no authority to get in and try to determine that somebody's equity is stopped or not. And it seems that what my colleagues suggested there, which now the Court has suggested, is that if you want to go through this process in order to have your client determined to be a citizen, you've got two ways to do it. One is to go with a habeas proceeding, or two is to file a 242B proceeding that isn't to try to do something about that in the middle of these proceedings. So I'm wondering why it is you haven't tried the 242B proceeding. Well, because in the middle of — when you're in the middle of immigration proceedings, we're not allowed to file for those at this time. So what we could say then, you're waiting for us to conclude that because the BIA cannot grant citizenship on the basis of equitable estoppel following Mu Stonich, well, all we've got to do is affirm that, and then you can go forward with the 242B proceeding? As long as we're allowed to apply for it NUNC protunc 1972 on the merits at that time. Well, the problem that I have is it seems to me that you tried to do it under the habeas proceeding, and there were habeas proceedings going along all during this time, and we've come to the end where the District Court said, well, I just haven't got any chance to do habeas, and now we still have this proceeding going forward. You've got a remedy under 242B. Mu Stonich is very straight. I cannot suggest that the IJ has any power to equitably estop the government from proceeding in front of it. Now, this particular IJ tried to go through a whole analysis trying to decide whether this equitable estoppel was right or not, and there are some cases that would suggest maybe they should have been able to do that, but if I follow Mu Stonich, it seems to me that I just say the BIA doesn't have a chance to deal with this, and you have one idea to go forward, 242B. Yes, Your Honor, there is a difference between the case here and Mu Stonich. In Mu Stonich, they did not find affirmative misconduct, and in our case, they did. So what? So what? That doesn't have anything to do with it. They said Mu Stonich didn't seem to go on that. It says that the IJ and the BIA have no authority to apply equitable estoppel against the government. In other words, you're talking about an administrative tribunal versus an Article III court. Correct. The one doesn't meet the other, and the administrative court has no ability to apply those principles against an Article III court. Do you dispute that, and if so, on what basis? Did we dispute the — in this context? No, that's what we're arguing, is that the immigration judge did not have the right to hold that the collateral estoppel and res judicata did not apply in this case. Okay, well, as my colleague points out, that's really another proceeding that you want to try. But for purposes of this proceeding, since we can't, under our case law, we can't really help you, you know, dodge around with what the BIA and the IJ said on this issue, what would you want us to do? You want us to try to send this to a district court to have fact-finding in the first instance? And if so, on what basis, what authority do we have to transfer the matter to a district court? Well, in the Brown v. Holders case, Your Honor, this court held that if the district court found a constitutional right was violated, it could order the agency to grant citizenship. Well, if you're going under Brown, I guess I have some distinguishing marks as it relates to Brown. There are cases, in fact two, one Fedorenko and another Perez-Valle, which would suggest that in some instances, this is the BIA now talking, that they can have a chance to apply equitable estoppel, and therefore say that there are parts of equitable estoppel which should not be applied, or collateral estoppel should not be applied in this case. But that's BIA authority, both of those cases. I'm now in a case where I got Mustanich right dead set in front of me. And it says, Article III courts make a ruling, the BIA has no right to do anything about it. They cannot get involved in trying to grant citizenship one way or another. And you have, I think you've already admitted, you have adequate authority to go forth and do what you need to do to help your client by either going under 242B or habeas. You tried under habeas, that didn't work. It seems to me that what we say is, BIA go forth, do what you have to do, because you can't do anything about this. You have no authority to act in this. Otherwise, and then the potential citizen, I guess, if you will, has the right to go under 242B and correct it. Yes, Your Honor. Our client is over age 18, and that is where our issue is under today's regulations. And we have to go under the 1952 laws, and that's why we're asking for the non-pro-tunc regulations to put it back to the 1972 where he qualified. Do you have any case law that would allow a court to do what you're asking be done here? That is, have a non-pro-tunc ruling, if you will, ab initio in this matter. Yes, Your Honor. I have a panchok, I might be, I'll spell that for the record. It's P-A-N-C-I-S-S-H-A-C-K versus D-H-S. It's a second circuit court decision, and it states that in the immigration context, the purpose of non-pro-tunc is to return the person to the position in which they would have been, but for the significant error in the immigration proceedings. I get the concept. I mean, you can get that in a horn book. What I'm asking for, is there a case that deals with facts like you have here that would allow you, before an Article III court, to ask the court to retroactively declare your client a citizen as of 19-what? 72. 72. Do you have such a case? I do not right now, Your Honor. I'm happy to provide a briefing for the court on that subject if you would like. I don't know whether my colleagues want one. I haven't found such a case. Do my colleagues want a 28-J letter? I think we're okay with it. If you had one, I figured you would give it to us. Okay. Let me ask you another question, Counselor. Was there ever an application for a 242B procedure filed by the plaintiff, by petitioner? There was a, in 1971, there was a N-600, which is a certificate of citizenship application that was filed, and at that point they did deny it and required Mr. Herrera to return with a lawful permanent resident card, and they did not file, they did not inform him. That was the whole purpose of the- I understand that argument, so the answer to my question is no. Nothing after that application, no. And yet, you knew he was a legal permanent resident, right? Correct. Okay. All right. Do either of my colleagues have more questions? We've let you run a little bit on because we've been asking you questions, so we thank you for your argument, Counsel, and if you will, you're underwater, so to speak, on your time, not on your argument, on your time. So let's now hear from the government. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. I'm Carmel Morgan on behalf of the Respondent, the U.S. Attorney General. It's the government's position that you cannot apply the district court's 2004 ruling to have a preclusive effect in the immigration proceedings that are at issue. That's because that's an Article III court and this is an administrative court, a la Mustanich, or what? I think you could reach that conclusion by looking at the Mustanich case. Although the board and the immigration judge didn't decide the case in that manner, we in our brief offer that as a possible resolution. It does seem to me that Mustanich and the U.S. Supreme Court's decision in Pangilinan are very clear that you can't apply equitable estoppel to grant someone citizenship. But that's not what's being sought here. It's not a matter of asking the court to grant citizenship. It's just saying that you can no longer call this person an alien. That's what's been decided, and there's a difference between alien and citizen. That's correct. However, I think in effect it's awfully close. Not really. Think of all the advantages of being a citizen that an alien would not have. Can this alien vote? Can this alien serve on a jury? You know, there are many things. There are a few. And being issued a passport. Yeah, I was just going to add, and being issued a passport. So there are privileges of citizenship. Couldn't vote anyway probably because of his criminal record. That's true in some states. But in any event, there is a difference between citizenship and being an alien. It's not the full benefits of being a citizen. So we're not trying to confer citizenship, and neither was the district court. It was simply saying the issue of alienage has been decided. Well, I don't think respectfully that the district court decided the issue of alienage. I think it's a little bit closer to an acquittal in a criminal case. I don't think there's any dispute from either side in this case that Mr. Herrera is, in fact, an alien. Well, I guess that would be, one could argue that. But it seems to me that there's some res judicata or collateral estoppel problems with making that determination. My question is, given what the BIA did, given what the IJ did, do I have to return this case to them? Because it seems to me that if I go under the mustanic or that kind of an approach, that they took a different approach, do I need to return that to them to make this decision? I don't think you do, Your Honor, because it has been established that Mr. Herrera is removable. There's no dispute that he's not a citizen. Well, if I go under what happened with the IJ, the IJ really came down similar to what we said in Mustanich, but then went on to say, but there are some cases where equitable estoppel, collateral estoppel, have been allowed under the BIA's regulations. And so, therefore, I'm determining that based on some, if you will, factor that could be appropriate, I'm not going to do it here, which I don't know. I don't think that that is something we would agree with, with Mustanich. I think he's gone outside of where he needs to go, so do I have to send this back to him? I don't think you do. I think that would probably amount to something akin to harmless error because the result is the same. What would you have us do? I would have you simply deny the petition for review in this case. And then if that happened, then where does that leave the petitioner from your perspective? As I understand it, and perhaps you could confirm, but I believe he's back in Mexico. He asked the court to lift the stay. Removal and his rights, whether he's an alien or whatever, those are separate issues, are they not? He could proceed, even if he were in Mexico, to try to clarify his status, right? I suppose he could. So from the government's perspective, you're still resisting this concept that he's not an alien, even though that's not citizenship in the full sense of the word. I think the Mustanich case comes pretty close. In that case, they said that the government could not be stopped from denying that he was a citizen. And here it's the government cannot be stopped from asserting that he's an alien. I think they're pretty much in line. Well, they're different issues, aren't they? I mean, you can be a non-alien and still not be a citizen. I mean, the government regularly allows people who are seeking status that has many similarities to citizenship without giving full citizenship, does it not? I mean, for example, the president has proposed the regulation. Now it's a matter of some dispute. But the reality is it confers, if it becomes effective, a lot of the characteristics that are enjoyed by citizens. But they're not citizens. And this is a government program. Is there any difference in the sense that if the petitioner here is allowed to have certain rights that are somewhat like citizenship, that does not make him a citizen, do you agree? I guess I agree with the general concept. But here I think Congress has specifically provided that persons in his position that have been convicted of aggravated felonies are to be removed. And that enforcement authority — You're mixing it up, though. Go ahead. That's if he's an alien. But that's what has already been decided. And that's where our dispute is. If it's already been decided that he's not an alien, he was a lawful permanent resident, there was this mistake, and so he can't be an alien at this point, you want to sort of undo that and say, we find he's an alien, therefore removable. So we have a circular problem. He was once an LPR, right? Yes. Right. Okay. And the district court in this other case said, not an alien because of the mistake years ago. But respectfully, I don't think that's what the district court said. The district court went out of its way not to invalidate a prior 1999 deportation order. What did it do in the end, then? What did the district court do in its holding? It did two things. Yes. It said, one, that the government was estopped from asserting he was an alien within the criminal proceeding, and, two, it refused to apply — That takes us back to res judicata. You say within the criminal proceeding, as if it's limited to that, and as if that holding has no effect in later proceedings. I don't know where that idea comes from, that it has no effect in other proceedings. Oh, there's plenty of case law that would say when there's a difference in the burden of proof between criminal and civil proceedings, that collateral estoppel doesn't apply. Wasn't that the issue we asked you to address in a separate order, whether the BIA and the IJ can apply those equitable exceptions? Yes. In this case, Chang v. United States, we held that an immigration judge cannot hear the sort of claims at issue here, which include whether equitable relief is available. So if they can't apply the exceptions, then estoppel would apply. If they can't apply the equitable exceptions that you rely on, namely the different standard of proof. I'm not sure that the difference in the burdens of proof is really an equitable exception. I think it's just an exception to collateral estoppel, that it doesn't apply. Let me ask you a question. There are two cases that we know of where the service, the INS, the BIA, has suggested that one can apply equitable estoppel. One was a matter of Fedorenko, which is 19I and December 57, the BIA in 1984. And another was the case of Perez-Valle, which is a 17I and end December case of 1980. And both of those, they were allowed, or the INS suggested that one could determine this particular issue. What do you say about those cases? Well, in Fedorenko, they were looking at collateral estoppel. But in Fedorenko, the prior decision wasn't a criminal proceeding. It was a denaturalization proceeding, and so the burden of proof was the same. In Perez-Valle, as I recall, I believe that case did have to do with a criminal proceeding, but the board found that because of the differences in burden of proof, that it wasn't going to apply collateral estoppel, if I'm remembering the case correctly, Your Honor. So how does that, how do they weigh into your argument you make today? Well, under Fedorenko, collateral estoppel is possible to apply across different types of proceedings, but only when you have the same burden of proof, and under Perez-Valle, it's inappropriate to apply principles of collateral estoppel where you have those differences in burden of proof. If there could be a potential outcome where you could imagine that someone in the district court proceeding, the government, might fail to meet the higher burden that's applicable in the district court, it would be unfair to apply those equitable principles. Do either of my colleagues have further questions? We thank both counsel for argument, and the case just argued is submitted.
judges: M. Smith, N.R. Smith, Scheindlin